### LLOYD BOOTH COMPANY v. MAHONING CO. (COMRS.) ET AL.

**1. ABUTTING OWNER'S EASEMENT IN STREET.**

An abutting owner's easement in a street consists not only in having its surface free and unobstructed, for ingress and egress, but also in having it free for light and air to the premises.

**2. EASEMENT AS MUCH PROPERTY AS LAND ITSELF.**

The easement of an abutting property owner in a street is as much property as the lot itself and comes within Sec. 19 of the bill of rights, providing that private property shall be held inviolate but subservient to the public welfare and requiring compensation when so taken, and is not a mere right of consequential damages to be recovered by a party as in other cases.

**3. OBSTRUCTION OF LIGHT AND AIR—INJUNCTION.**

An obstruction to the light and air in the street of an abutting owner is as much an impairment to the rights of the property owner as diversion of travel or other injury to property, and is an infringement on his easement in the street. Therefore, plaintiff having erected a large machine shop flush with the street in which a great number of windows had been constructed for the purpose of obtaining as good light as possible, the erection of a viaduct in such street by which the light will be impaired, destroys his easement and injures his property rights, for the prevention of which injunction lies.

**4. DUTY OF COMMISSIONERS TO MAKE COMPENSATION.**

The erection by county commissioners of a high level bridge in a street by reason of which the easement of abutters to the free and obstructed use of the street will become impaired, is a taking of the property thereof for road purposes within the meaning of Sec. 19, Art. 1 of the constitution requiring that compensation shall be made in money to property owners therefor. Therefore, it is the duty of the commissioners to make the compensation and not that the property owner to obtain it by the common law action for damages. Such compensation need not, however, be awarded before the property is taken.

**5.** COMPENSATION ESSENTIAL TO VALIDITY OF STATUTE.

It is essential to the validity of any act under Sec. 19 of the bill of rights, authorizing county commissioners to take property for the repairing or making roads, that it contain a provision for fixing compensation by a jury to the owner of the property. In the absence of such provision an action for damages cannot be maintained and no other remedy except injunction is afforded the property owner to preserve his rights.

**6.** RULES APPLIED.

The erection of a viaduct and approaches thereto in a street in front of plain tiff's premises, the viaduct being sustained by steel pillars standing on stone foundations sunk to the level of the street in which the city had established substantially its present grade more than twenty-one years before, though not preventing the use of the street by such as are compelled to use it, but diverting travel across the river which hitherto had passed plaintiff's property on a lower level, and even compelling plaintiffs to go back up the street a long distance to the approach in order to pass over the river in question, interferes with the access to such property and materially affects such owner's rights in the street, and an injunction, where compensation is not made, will lie not only to restrain the construction and erection of such viaduct, but also to remove work already performed.

APPEAL.

LAUBIE, J.

The case of the Lloyd Booth Company against the board of commissioners of Mahoning county and others, is in this court on appeal, and is a proceeding for an injunction to restrain the defendant from the erection of a viaduct or approaches to a bridge in front of the plaintiff's premises upon Market street in this city. The case was tried upon the pleadings and the evidence, and the facts as found by the court will be stated as I proceed in the opinion.

It seems from the evidence and the admissions in the pleadings that Market street, named in this proceeding, is one of the principal streets in this city; that it extends in front of the premises of the plaintiff running from north to south towards the Mahoning river; that it has been a street of the city for a period of time from which the memory of man runneth not to the contrary, and more than twenty-one years before the commencement of this suit the city had established the grade of this street from the north southward to, and past, the premises of the plaintiff, and that grade and the street has been substantially from that point to this. There was shown to be slight variations in parts of the street where it did not conform accurately to the established way, but that was immaterial by action of the proper authorities.

The establishment of a grade consists in the action of the city or municipality in defining it and publishing it in the proper manner, and that was done in this case. The grade actually in existence upon the street was substantially that which had been established by the city. This grade descends from Front street, a point about 210 feet north of the line of the plaintiff's premises, where Front street intersects Market street at right angles. It was there that the grade descended until in front of the portion of the plaintiff's premises, where it reaches perhaps the bottom of the grade established.

The plaintiff, a manufacturing corporation, purchased the premises in question, and for the purpose of its organization, it erected upon the north part of the lot, perhaps twenty-five feet westerly from the line of

Market street, a frame building as a foundry, and subsequently purchased additional premises on the south; and there, flush with the sidewalk, it built what is said to be a machine shop of great dimensions, some forty feet high, the front of which faces upon the street, composed principally of glass, in order that the proper light and proper ventilation may be had.

Market street originally did not extend to the river bank, but at some time prior to the time mentioned, the city or somebody having authority so to do, which is not determined in this case by any of the evidence, so far as we now remember, extended Market street across the river by the construction of a bridge and approaches thereto. The bridge commenced upon Market street south of the line of the Pittsburgh and Western Railway Company and south of the south line of the premises of the plaintiff, so that Market street stretched then across the river, but the approaches to the bridge were south of the premises of the plaintiff, and did not in any manner encroach upon the street in front of their premises.

A bridge crossing a depression where there is a public street or highway constructed, forms a part of the street or highway, just as much so as any other part of the street, so that Market street prior to the time of the commission of the acts in question upon the part of the defendant, extended northward and southward to and across Mahoning river to the bluff upon the opposite side. In that condition it remained for some years; how long we are not prepared to say, because the evidence does not disclose when the first bridge was built. At all events for some years it had been in that condition.

Market street is ninety-four feet wide. The commisssioners of the county took upon themselves the right, and which they have the right to do, to lay out a county road from certain portions of Market street, perhaps commencing on the south line of Front street and at this intersection with Market street and stretching southward across the river, following the line of Market street to the bluff upon the other side and to a point higher than Market street then reached upon the south side of the river; at least such was the intention as they extended it perhaps beyond the line of this bridge on the south.

To this there was no objection on the part of the plaintiff and no question is made of that in this case. The commissioners of course laid out the street no wider than they were empowered to do by the statute, which was sixty feet and they make the center of it the center of Market street; and now come in the acts which are complained of, and they are that the commissioners determined to make a new highway at this point of the line where they had established the county road. They determined to erect a bridge and its approaches, spoken of as a viaduct, commencing at the south line of Front street, two hundred and ten feet north of the north line of plaintiff's premises, and stretching from there along the line of the county road that they had then established, to a point on the south side of the river, at an elevation much higher than the then roadway and grade. Starting from Market street they intended and perhaps did build solid masonry, as a part of the approach, some distance, perhaps one hundred and seventy feet southward towards the premises of plaintiff, sixty feet in width, and this on an ascending grade which would carry the approach to the bridge to the southern point determined upon at the top of the bluff on the south side of the river, and thus in effect make two roadways on Market street.

Lloyd Booth Co. v. Commissioners.

In front of the plaintiff's premises the commissioners proposed to construct this bridge or viaduct upon pillars, resting upon stone foundations sunk to the level of the street, steel or iron pillars perhaps a foot in width or in diameter, and in front of plaintiff's premises there would be a double row of these pillars, perhaps the nearest one, the nearest row to the plaintiff's premises, three hundred some feet therefrom to the east. Now it is claimed that this would create no detriment whatever to the plaintiffs premises, in that it would not interfere with access thereto, but we hold against that contention, and find that it would materially affect the rights of the plaintiff in the street.

I have always said that the construction of this roadway would of itself affect travel upon the street; even the plaintiff itself, its officers and servants, desiring to cross the river at this point and use Market street for that purpose, would be compelled to go northward from their own premises and from the north line of those premises two hundred and ten feet at least before they could reach the end of the viaduct and enter upon the street across the river; and the travel from the north to the south side of the city at this point would necessarily be diverted from the street in front of the plaintiff's premises, as theretofore existing, and would be compelled to pass over the approaches to the bridge from Front street and thus again travel upon the street would be diverted. And in addition thereto, it would materially interfere with the access to their premises.

It is useless in our opinion to say that these piers and columns thus intended to be constructed in front of plaintiff's premises would in no manner interfere with the access to their building. It would in our opinion materially interfere with the access thereto.

Now before the commissioners entered upon the construction of this work, if it were at all necessary for the plaintiff so to do, plaintiff should have protested to the board of commissioners against this erection on the ground that they had the right to the free and unobstructed use of this street, and that it would injuriously affect their premises and injure the easement which they claimed first in the streets.

This perhaps is all that is necessary to state in the way of facts as disclosed by the evidence in the determination of the case.

In law what would be the rights of the plaintiffs in the street? In the first place they had, as already indicated, an easement in the street for ingress and egress to and from their premises, and indeed, counsel for the defendant makes the claim that that is all that they have.

Their lots abutting upon the street, they were bound by the street by its west line, and while they perhaps owned no part of the land itself of which this street was composed, yet they did own an easement in it; a privilege on the street which came to them in the occupation and enjoyment of their premises, and this easement applies in the first place, to the right of ingress and egress to and from their premises. It also gave them the right to the free and unobstructed use of the street in front of their premises for its full width, and it necessarily included the right to have it free and unobstructed to travel and to light and air. These matters are embraced in and constituted their easement in the street.

So far as the question of light and air is concerned, counsel for the defendants in error deny this, and, as I have said, their claim is, that the easement consists in nothing but the right of ingress and egress, and

they claim that that had not been interfered with. Strange to say they rely upon Cohen v. Cleveland, 43 Ohio St., 190 [1 N. E. Rep. 589]. In that case the opposite is held. The case of Cohen v. Cleveland, *supra*, reached the Supreme Court on error upon a disposition of a demurrer to the petition. It was a case very similar in its facts, as stated in that petition, as the one before us. The viaduct was built on Superior street and in front of Cohen's premises; it was constructed perhaps forty-five feet high and not the full width of Superior street. This is what is given in the syllabus in the case. Referring to the statute in regard to the matter they say:

"Under the acts of 1872 and 1876 (69 O. L., 138; 73 O. L., 107; 3 Rev. Stat., 616, 617), a viaduct sixty-four feet wide, with a level roadway was constructed in Cleveland across the Cuyahoga river. On the south side of Superior street between Water street and the river, a distance of 768 feet, the city condemned a strip of ground, and the viaduct was constructed over that strip and over part of Superior street, about thirty-seven feet being over the strip opposite Cohen's premises, and the balance over the street, so that in effect Superior street which was ninety-three feet wide, is reduced in width between Water street and the river, and opposite Cohen's premises its present width is sixty-six feet. The elevation of the roadway of the viaduct above Superior street gradually increases from Water street to the river, and opposite the premises of Cohen, which are on the north side of Superior street midway between Water street and the river, the elevation is forty-five feet, and it is alleged that the viaduct diverts travel from that part of Superior street, impairs the light and air to Cohen's premises, causes noise and the jarring of his house day and night, and has impaired the value of his property and reduced its rental value. *Held*: 1. The viaduct is a lawful structure. 2. On proof of the alleged injury, Cohen is entitled to damages."

The alleged injury, diverting travel from plaintiff's premises, impairing light and air, causing noise and jarring of his house day and night, and upon the proof the court say this injury is one for which a person would be entitled to damages.

It may be evident that in such a case, whatever a party might recover damages for, he could only recover by reason of the fact that the acts constituted injury or impairment of his easement or right in the street, and if the impairment of the light and the air, or the other obstruction to his premises, constituted injury for which he could recover, he could only recover by reason of the fact that it was an impairment of the easement which he had in the street, precisely the same as diversion of travel in front of his premises, or, if you please, all the injuries affected by the structure in impairing the access to his premises from the street or *vice versa*.

In the opinion these matters are further spoken of. It is said in the opinion, on page 193: "Injuries resulting from the change of established grades in streets, though made in accordance with the statute, and without negligence or malice, and other injuries of a kindred character, have been held to afford ground for the recovery of damages against municipal corporations."

The opinion then cites a number of authorities in this state and elsewhere. And the court say in addition thereto: "If we look alone to

the allegations in the plaintiff's petition, and the facts which the evidence tended to establish in his favor, a far stronger ground of recovery was shown than either of the Ohio cases cited. We have seen that the roadway of the viaduct, in front of Cohen's premises is forty-five feet above the surface of Superior street, and it is averred, and there was evidence given tending to show that the viaduct, to some extent, shuts out light and air from his premises, that by reason of the viaduct, dust and other obnoxious substances are constantly thrown upon the premises of plaintiff and on persons passing along the street; that there is constant noises and jarring his premises, day and night, by reason of travel on the viaduct; that the viaduct has diverted travel from that part of Superior street between Water street and the river; and that by reason of the premises the value of the plaintiff's property and his rents have been reduced one-half."

I do not care to follow the opinion, extensive in its character, any further; it is rendered by the Supreme Court in this case, and it sufficiently appears from what I have read and from what I have said, that the court took the view that obstruction to light and air was as much an impairment to plaintiff's easement as diversion of travel or any other injury that he complained of, and it was infringing on his easement in the street; not only that, but the court referred to Story v. Railway Company, 90 N. Y. 122 [43 Am. Rep. 146], where the precise question arose and determined that as part of an easement in the street was the right to the light and air and that it constituted substantially a portion of the property, the right of the lot owner. That was a case of the erection of an elevated railroad in the street in front of the plaintiff's premises and I need make no further references to the facts in the case than to make that statement. It is said in the syllabus that "The erection and operation of an elevated steam railroad," such as I have described in this case, "will, 'to some extent obscure the light of the abutting premises and impair the general usefulness of the plaintiff's premises' also, 'that the line of columns abridges the sidewalk and interferes with the street as a thoroughfare;' " and the road would incidentally damage plaintiff's premises and depreciate its value. *Held*: that the proposed structure was incompatible with and destructive of the use of the street as such, and of plaintiff's property rights, as far as interfered with, and unless acquired and compensation made therefor, would violate not only said constitutional provision, but also the statutes by which defendant is bound.

And in the opinion on page 146, I find this language: "But what is the extent of this easement? What rights or privileges are secured thereby? Generally it may be said, it is to have the street kept open, so that from it access may be had to the lot, and light and air furnished across the open way. The street occupies the surface and to its uses the rights of the adjacent lots are subordinate, but above the surface there can be no lawful obstruction to the access of light and air, to the detriment of the abutting owner. To hold otherwise would enable the city to derogate from its own grant, and violate the arrangement on the faith of which the lot was purchased. This in effect was an agreement, that if the grantee would buy the lot abutting on the street, he might have the use of light and air over the open space designated as a street. In this case it is found by the trial court, in substance, that the structure proposed by the defendant, and intended for the street opposite the plaintiff's premises would cause an actual diminution of light, depreciate

the value of the plaintiff's warehouse and thus work his injury. In doing this thing the defendant will take his property as much as if he took the tenement itself. Without air and light, it would be of little value. Its profitable management is secured by adjusting it in reference to the right obtained by his grantor over the adjoining property. The elements of light and air are both to be derived from the space over the land, on the surface of which the street is constructed, and which is made servient for that purpose."

Now several of the judges composing that court, by reason of the importance of the question, filed opinions in that case, and it was held that the easement of the plaintiff in the street not only consisted in having an unobstructed street on its surface, but it consisted equally in having it free above the surface for the convenience of light and air to the premises, and that when that was destroyed, as it was in this case, it was such an impairment of the easement as entitled plaintiff to relief.

Now it is said here that although this may be so, yet after all it is not the taking of the property within the meaning of the statute; that it is simply the right of recovery of consequential damages.

We supposed that question was so firmly settled in the law of Ohio that no one would dispute it; that an easement in the street, the privilege which the lot owner has in all its uses, the free and unobstructed use of his property within the meaning of the constitution, so declared in Crawford v. Delaware, 7 Ohio St., 459, since affirmed by our Supreme Court in more than one case, is property as much as the lot itself. It would seem, therefore, to be useless to discuss that question.

The constitution of the state to which reference has been made is Sec. 19 of the bill of rights. "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be opened to the public, without charge, a compensation shall be made to the owner in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

As I have said, it has been claimed that this easement in the street is not within the purview of this section or other sections of the constitution. That it is a mere right of consequential damages to be recovered as in other cases. But, as I have said, it is hardly worth while to discuss that proposition, because counsel here are as well aware as we, that it has been firmly settled and determined in this state that an easement is property within purview of the constitution, and it has been so emphatically declared to be such, that the courts find that it is as much property as the lot itself, and in this case, to which reference was made in Story v. Railway Co., 90 N. Y. 122 [43 Am. Rep. 146], and Cohen v. Cleveland, 43 Ohio St., 190 [1 N. E. Rep., 589], this precise question was determined; also that, conceding the city retained the fee of Water street, it dedicated it to the use specified, and covenanted that it should for ever be kept open as a street for the benefit of the abutting property; that the right thus secured constituted an easement which became at once appurtenant to the land conveyed and formed an integral part of the estate in it and constituted property within the meaning of the provision

of the state constitution which prohibits the taking of private property without just compensation.

And it is said by Tracy, J., in his opinion on page 167: "The street thus became what is known to the common law as the servient tenement, and the lots abutting thereon, the dominant tenement. Such servitude constitutes a private easement in the bed of the street attached to the lots abutting thereon and passed to the plaintiff as the owner of such lot. That an easement is property, within the meaning of the constitution, cannot be doubted. This was expressly adjudicated in this court in Arnold v. Railroad Co., 55 N. Y., 661."

And then he proceeds and discusses the question whether that easement impairs the right to light and air.

So that while we, perhaps, are advanced somewhat on this question over the other states of the Union, yet New York has taken the same view of it, "that this easement of the street is property that cannot be destroyed or impaired or invaded without making compensation therefor."

The next question is, whether compensation must be first awarded to a party, under the constitution, before the property can be taken. And in this we do not know that counsel in the case are at all in variance. At all events, we think it is a case where the compensation need not be awarded in the first instance or before the property has been taken.

The section of the constitution which I have read, Sec. 19, Art. 1, expressly states that where property is taken for the purpose of making or repairing roads which shall be open to the public without charge, compensation shall be made to the owners in money, but not before the property is taken. In other cases compensation can be first awarded, paid or secured by depositing the money.

Now this is a case where the property is taken for the making of a road. It is done by the county commissioners in the making of a county road. True, it is laid over a street in this city, but that does not interefere at all with the proposition. They have the right to lay out county roads over streets in municipalities, and as we held once in Ashtabula county, the entire street or county road consequently can be shut up against the rights of the parties. County commissioners, where they have laid out a county road in a municipality, have a right to have it opened and the municipality can not close it up. It is not for the purpose of simply repairing Market street, nor of changing its grade, but it is for the purpose of establishing a second road over that part of the city. It leaves Market street as it theretofore existed, in front of these premises at least, and that is all that is necessary for us to consider. It leaves Market street at its grade as it was before and it establishes a new roadway which in certain respects, heretofore described, by necessity supersedes the old traveled roadway or street, thus making substantially a new road over a portion of the street, so that it comes within the provision of the constitution relative to the taking of property for the making of a road.

Coming then within the meaning of the constitution, it follows of course that compensation need not be awarded in the first instance, before the taking of the property, but here comes the line of demarkation between the counsel for defendant and the court. Counsel for defendant claims that the board of county commissioners can proceed in the construction of this roadway and leave the plaintiff to its remedy at common law to recover damages for whatever injury it may create.

We take issue with counsel upon this because this provision of the constitution requires that compensation shall be made for the property thus taken. It shall be made, not obtained by the plaintiff suing to recover damages, but it shall be made by the parties or board who take the property, and it must, in order to be within the constitution and make it a constitutional act of the board, be within the law a provision providing for compensation to be assessed by a common law jury, not at the instigation of the lot owner, but at the active instigation of the board of commissioners; that board must be the actors, and the law itself which authorized them to take the property, to be a constitutional provision, must contain within it a provision for assessing to the lot owner that compensation by a common law jury.

Now this matter has not been determined in the case to which I have referred, Cohen v. Cleveland, *supra*, which has nothing at all bearing upon this question because it is stated there that the law provided the means for or the municipality provided the means to have the compensation fixed and awarded by the action of the common law jury, so that it did not determine the question. It recognized the fact that the law was such as the constitution required and in that instance it had been carried into the statute.

The question is determined in Hendershot v. State, 44 Ohio St., 208 [6 N. E. Rep., 245], and there can be no question in this respect. The *per curiam* is very short. The syllabus is: "There is no provision in the statutes whereby the owner of material taken by a supervisor for the repair of a public highway, under Sec. 4715, Rev. Stat., can have his compensation assessed by a jury as required by Sec. 19 of the bill of rights, and it is therefore invalid; and the owner, resisting a supervisor entering upon his lands under the provisions of said section, is not guilty of resisting an officer under the provisions of Sec. 6908, Rev. Stat."

Now the court says, "The plaintiff in error was indicted and convicted under Sec. 6908, Rev. Stat., upon the charge of resisting a supervisor of a road district while the latter was, under the provisions of Sec. 4715, attempting to enter upon certain uncultivated lands of the accused, near a public highway, for the purpose of obtaining gravel to repair the same.

"That resistance to a supervisor of roads while in the execution of his office is an offense within the provisions of Sec. 6908, Rev. Stat., was decided in Woodworth v. State, 26 Ohio St., 196.

"The ground, however, upon which a reversal of the conviction of the accused is asked, is that the section of the Revised Statutes (4715) under which the supervisor claimed the right to enter upon his lands, makes no provision for the assessment of his compensation by a jury, as required by Sec. 19 of the bill of rights, and is therefore void. This we think is the fact and that the accused must be discharged. It is true that under this section of the bill of rights, property may be taken for the repair of a public highway without first making compensation in damages, as in other cases; but this is the only difference; the owner is, after his property has been so taken, entitled to have his compensation assessed by a jury. Lamb v. Lane, 4 Ohio St., 167; and, as said in that case, the constitution does not in this regard execute itself.

"We fail to find any provision in the statutes by which the owner of property taken under Sec. 4715, Rev. Stat., can have his compensation assessed by a jury. It is not found in Sec. 4744 and 4745. These

sections only provide a mode by which he may be paid such sum as may be allowed to him by the township trustees, and, where the amount exceeds the sum of $25, by the latter in connection with the county commissioners. No appeal is given from the decision of the trustees or commissioners to a court in which the owner may have his compensation assessed by a jury.''

So that there can be no question as to this. No act is valid which authorizes county commissioners, or any other body, to take property from the making or repairing of roads, unless it contains a provision for fixing compensation to the owner of the property. It is admitted on all hands that there is no such provision in the statutes of this state. We understand, and we are pleased to hear it, that perhaps a proper law has within a day or two been passed by the legislature of this state to meet this contingency and that there will be but little delay in the construction of this roadway by reason of our action in the premises.

Finally, it is said that an injunction is not a proper remedy. That that is not open to the party. Now I am at a loss to know why these questions are pressed upon the court, when they have been so firmly settled in the law of the state; why we should be called upon to reiterate the decisions of the Supreme Court that are open to the parties and counsel and are known to them, because the attorneys in this case are not only reputable, but they are men of ability and knowledge. They must know of these cases and of the decisions of the Supreme Court which has settled every question in this case against them and yet we are called upon, as I have said, to reiterate the decisions in the settlement of this case. Every proposition in it that has the least show of merit has been decided over and over again by the Supreme Court of this state and this last question made in the case as well.

In this case counsel have referred to and commented upon, by both sides, Cincinnati & S. G. A. St. Ry. v. Cumminsville, 14 Ohio St., 523. There, the railroad company undertook to build a street railroad in front of the premises of the plaintiff. They proposed to locate it within sixty-three feet of the sidewalk in front of the store of these parties, and all these questions were settled in that case, i e., that it was infringement and impairment, an attempted impairment of the easement of the plaintiff in the street; it was the taking of their property and was an attempt to take without compensation, and the action was for an injunction to restrain the railroad company from the construction of the roadway. That it was a permanent erection in the street, that it would destroy travel—the travel would only be obstructed in front of the plaintiff's premises near the crossing—and the court held that it was an attempt to take away the property of an individual, which the court would restrain until steps were taken to acquire it according to law, or by the consent of the owner. They were enjoined in this case from constructing it, and not only that, but a mandatory injunction was issued to compel them to remove what they had already built.

So in the later case, Watson v. Trustees, 21 Ohio St., 667, it was disposed of by the Supreme Court of this state in a very few words. That was a case where the township trustees undertook to locate a ditch or drain on lands lying adjacent to the public road, where they had a right to do it, and the court held that they had no right to do it in this case because the statute contained no provision for compensation, so the injunction was made perpetual. So we have had decisions on every

question involved in this case, and they have been settled and determined by the Supreme Court of this state, not one of which has ever been shaken.

It leads us to the conclusion that the injunction in this case must be awarded. Not only to restrain the construction of this structure in front of the plaintiff's premises until their consent is obtained, or right is obtained by appropriation or other proper proceeding, but a mandatory injunction must issue to compel them to fill up such excavations as they have made and to remove the obstruction that they have now in the street in front of the premises of the plaintiff.